2012-1411

# United States Court of Appeals
# for the Federal Circuit

DECKERS OUTDOOR CORPORATION,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade in
Consolidated Case No. 08-CV-0410,
Judge Gregory W. Carman

PETITION FOR PANEL REHEARING AND REHEARING EN BANC

RODE & QUALEY
*Attorneys for
Plaintiff-Appellant*
55 West 39th Street
New York, New York 10018
(212) 944-7333

Patrick D. Gill
*Attorney of Record*
William J. Maloney
*Of Counsel*

Dated: June 18, 2013

## CERTIFICATE OF INTEREST

Counsel for the (appellant) <u>Patrick D. Gill</u> certifies the following:

1.    The full name of every party or amicus represented by me is:

### Deckers Outdoor Corporation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

### NONE

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

### NONE

4.☐  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

### William J. Maloney, Eleanore Kelly Kobayashi

<u>June 18, 2013</u>
Date

/s/ Patrick D. Gill
Signature of counsel

Patrick D. Gill
Printed name of counsel

i

## TABLE OF CONTENTS

STATEMENT OF COUNSEL...............................................................................1

POINTS OF LAW AND FACT OVERLOOKED OR MISAPPREHENDED.......................2

ARGUMENT....................................................................................................3

  Introduction..............................................................................................3

I.      THE STATEMENT IN THE CUSTOMS GUIDELINES THAT A
        "SLIP-ON" INCLUDES A BOOT WHICH MUST BE PULLED
        ON SHOULD NOT HAVE BEEN GIVEN ANY DEFERENCE BY
        THE COURT IN REACHING ITS DECISION................................................4

II.     THE INTERPRETATION OF THE STATUTORY TERM, "FOOTWEAR
        OF THE SLIP-ON TYPE, THAT IS HELD TO THE FOOT WITHOUT
        THE USE OF LACES OR BUCKLES OR OTHER FASTENERS," IS
        IN ERROR BECAUSE THE ADDITION OF AN IMPLIED COMMA
        AFTER THE PHRASE "THAT IS" DISTORTS THE MEANING OF THE
        PROVISION AND FRUSTRATES CONGRESSIONAL INTENT.....................9

III.    THE MAJORITY ERRED IN NOT INTERPRETING THE STATUTORY
        PROVISION IN ACCORDANCE WITH ITS COMMON AND COMMERCIAL
        MEANING, IN IGNORING THE LEGISLATIVE HISTORY WHICH IS
        CONSISTENT WITH THE COMMON AND COMMERCIAL MEANING THAT
        SLIP-ON FOOTWEAR INCLUDES ONLY SHOES AND NOT BOOTS, IN
        AFFIRMING THE JUDGMENT OF THE TRIAL COURT WHICH
        RESOLVED CONTESTED MATERIAL FACTS IN FAVOR OF THE
        MOVING PARTY INSTEAD OF THE PARTY AGAINST WHOM THE
        MOTION WAS MADE, AND IN RESOLVING CONTESTED MATERIAL
        FACTS ON THE BASIS OF RANK HEARSAY CONTAINED ON
        INTERNET WEBSITES........................................................................13

CONCLUSION.............................................................................................15

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

## CASES

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)......................................1, 5

*Deckers Outdoor Corporation v. United States*,
  36 CIT___, Slip-Op. 12-53, p. 16, 844 F. Supp. 2d
  1324,(2013)...............................................11

*Perry S. McKay, et al., v. United States*, 199 F.3d 1376
  (Fed. Cir. 1999)..........................................15

*Skidmore v. Swift & Co., Inc.*,
  323 U.S. 134 (1944)....................................1, 5, 6

*United States v. Haggar Apparel Co.*,
  526 U.S. 380 (1999)........................................5

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)................................1, 2, 5, 7

*Warner Lambert Co. v. United States*
  407 F.3d 1207 (Fed. Cir. 2005).........................1, 8

## SENATE REPORTS

Committee Print 98-27, Senate Committee on Finance, 96th
  Congress, 1st Session (August 1979) .........................14

## STATUTORY PROVISIONS

Administrative Procedures Act, 5 U.S.C. §553 ..................5

Subheading 6404.19.35 ................................11, 12, 13

**TREASURY DECISIONS**

T.D. 93-88, 27 Cust. Bull 312 (1993) .......................... 6

**FEDERAL RULES OF EVIDENCE**

Rule 803(6) ........................................ 2, 3, 14

**RULES OF THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Rule 38(e)(4) ............................................... 9

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the majority's opinion is contrary to the following decisions of the United States Supreme Court: *United States v. Mead Corp.*, 533 U.S. 218 (2001); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and *Skidmore v. Swift & Co., Inc.*, 323 U.S. 134 (1944), as well as the decision of this Court in *Warner Lambert Co. v. United States* 407 F.3d 1207 (Fed. Cir. 2005), which delineate when pronouncements on tariff classification by U.S. Customs and Border Protection (CBP) are entitled to deference by the Court.

Based on my professional judgment, I further believe that this appeal requires an answer to the following precedent-setting questions of exceptional importance:

Whether an administrative definition, which, in the words of the dissenting opinion, "does not provide any reasoning for its definitions, but simply asserts by fiat that boot[s] which must be pulled on 'are' slip-on[s]," is entitled to deference.

Whether an administrative definition, which by its own terms is merely published as a non-binding guideline and not a CBP ruling, which was not subject to notice and comment and which contains no underlying reasoning, can be found to have the power to persuade within the meaning of the *United States v. Mead Corp.*, *supra,* and *Skidmore v. Swift & Co., Inc.*, *supra.*

Whether the courts can correct a perceived lack of statutory clarity by adding a comma to a statutory term where doing so changes the meaning of the term when used without the comma.

Whether the courts, having found the language of a provision to be ambiguous, can then disregard the legislative history of the statutory provision where Congress announced that it was the "final U.S. position [to provide] separate categories for boots and slip-on footwear . . . ."

Whether it is appropriate to grant summary judgment in the face of contested material facts about whether a particular boot falls within the meaning of the tariff term, "footwear of the slip-on type" based on selected internet search results which would be inadmissible under Rule 803(6) of the Federal Rules of Evidence.

### POINTS OF LAW AND FACT OVERLOOKED OR MISAPPREHENDED

The panel majority opinion overlooked or, at least, misapprehended the controlling effect of the decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001), the leading decision of the United States Supreme Court on the question of deference to Customs tariff classification decisions.

The majority opinion misapprehended the deliberate intent of Congress in omitting a comma after the words "that is" in the

tariff provision in question and undermined congressional intent
by implying the existence of same.

The majority opinion also misapprehended Congressional
intent to separately categorize boots and slip-on footwear.

The majority erred in affirming the granting of summary
judgment in the face of contested material facts and on the
basis of hearsay statements that are inadmissible under Rule
803(6) of the Federal Rules of Evidence.

**ARGUMENT**

## Introduction.

With due respect to the majority opinion, Deckers
completely and unequivocally supports every aspect of the
dissenting opinion. Deckers would find it difficult to improve
upon the points made on the question of deference; on the
statutory interpretation of the term, "footwear of the slip-on
type;" on the common and commercial meaning of the term; on the
reading of the lexicographic and technical authority cited in
the dissenting opinion; and in its application of the doctrine
that a statute "should be construed so that effect is given to
all of its provisions, so that no part will be inoperative or
superfluous, void or insignificant." Dissenting Opinion, p.2.

However, we will attempt to address the fundamental errors
in the majority opinion which are contrary to leading decisions

of the Supreme Court and this Court on the questions of deference and statutory interpretation.

Deckers does not underestimate its burden and the difficulty of seeking a Panel Rehearing much less a Rehearing En Banc. We recognize that such petitions are not favored under the Federal Rules of Appellate Procedure and the decision to file this petition was not made lightly. However, we are convinced that the decision in this case will have a profoundly detrimental effect upon the way in which CBP administers the Customs laws, and specifically upon the way in which tariff classification determinations are articulated by the agency and reviewed by the Courts. We are convinced the decision upsets well established precedents of the Supreme Court and of this Court. The importance of a thorough review of these issues and correction of the errors in this decision compel reconsideration and review en banc.

## I. THE STATEMENT IN THE CUSTOMS GUIDELINES THAT A "SLIP-ON" INCLUDES A BOOT WHICH MUST BE PULLED ON SHOULD NOT HAVE BEEN GIVEN ANY DEFERENCE BY THE COURT IN REACHING ITS DECISION.

Deckers respectfully submits that while the errors in statutory interpretation and the rewriting of the statutory provision by the trial court and by the majority opinion are significant errors warranting reconsideration, the deference accorded to the Customs guideline in question was the ultimate source of those errors.

4

The decision of the Supreme Court in *United States v. Mead Corp.*, 533 U.S. 218 (2001), is perhaps the most definitive pronouncement on the question of granting deference to decisions by CBP in the interpretation of classification provisions under the tariff laws.    The case involved the question of whether a Customs Headquarters tariff classification ruling deserves judicial deference.    *Mead*, 533 U.S. at 221.    The Supreme Court held that such a ruling was not entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but that it would be eligible under *Skidmore v. Swift & Co., Inc.*, 323 U.S. 134 (1944) "to claim respect according to its persuasiveness." *Id*.    Under *Mead* and *Chevron*, a Customs regulation or other agency regulation subject to adjudication and/or notice and comment in accordance with the Administrative Procedures Act, 5 U.S.C. §553, is entitled to deference. *Mead,* 533 U.S. at 226; *Chevron*, 467 U.S. at 865-866. See also *United States v. Haggar Apparel Co.*, 526 U.S. 380 (1999).    This is the highest form of deference accorded to a duly promulgated regulation.

It is equally clear that a CBP ruling is not a regulation and that it is not entitled to *Chevron* deference.    *Mead*, 533 U.S. at 226-227.    However, according to *Mead*, there is "the possibility that [such a ruling] deserves some deference under *Skidmore* . . . ."    *Mead*, 523 U.S. at 227. (Emphasis added)    As

5

noted on page 5 of the dissenting opinion, citing *Skidmore*, 323 U.S. at 140, the weight given to a ruling in a particular case "will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." Thus, while a CBP ruling will not be given *Chevron* deference, it will receive the more limited deference accorded under *Skidmore*, but only if the *Skidmore* factors are met and ultimately the ruling has the power to persuade.

Both the majority and dissenting opinions recognize that the guideline at issue in this case does not even rise to a level of a Customs ruling which may, but does not automatically, receive *Skidmore* deference.  Majority Opinion, p 8; Dissenting Opinion, p. 5.  Indeed, in the preamble to the guidelines, it states that the guidelines are not rulings and that "the definitions are provided merely as guidelines."  T.D. 93-88, 27 Cust. Bull 312 (1993).  If such a guideline is to be given deference, it must meet the tests of *Skidmore* and clearly have a power to persuade.  The specific guideline that the statutory term, "footwear of the slip-on type" includes "a boot which must be pulled on," relied upon by the majority, makes no attempt to meet the *Skidmore* tests.  It is simply a bald statement of an administrative position.  As such, it is utterly lacking in any

6

power to persuade. The guideline in question is, as noted in the dissenting opinion, nothing more than a "fiat" that is devoid of *Skidmore* factors which would warrant deference. Dissenting Opinion, p. 5.

The majority opinion erroneously attempts to justify affording *Skidmore* deference due to the fact that four rulings were issued by Customs classifying boots without laces or fasteners as footwear of the slip-on type. Majority Opinion, p. 8-9. This alleged "consistency with earlier and later pronouncements" is the sole *Skidmore* factor relied upon by the majority. However, these four rulings are far different in kind from the earlier and later pronouncements that may confer deference under *Skidmore*. As noted in *Mead*, "[m]ost ruling letters contain little or no reasoning, but simply describe goods and state the appropriate category and tariff." *Mead*, 533 U.S. at 224. The four rulings relied upon by the majority are precisely that type of local ruling. For the convenience of the Court, all four rulings are attached in the Addendum to this petition. Conversely, the Headquarters ruling in *Mead* "set out a rationale in some detail." *Id*.

The Supreme Court commented on the types of classification rulings relied upon to support *Skidmore* deference by the majority as follows (*Mead* at 233):

> Indeed, to claim that classifications have legal force is to ignore the reality that 46 different Customs offices issue 10,000 to 15,000 of them each year . . . . Any suggestion that rulings intended to have the force of law are being churned out at a rate of 10,000 a year at an agency's 46 scattered offices is simply self refuting.

The type of perfunctory local rulings which the majority relied on simply state what the merchandise is and how it should be classified. It should be expected that local Customs officials issuing these types of rulings, which contain no reasoning, would follow the dictates of the guideline in question. However, such rulings do not entitle the guidelines in any way to *Skidmore* deference because they make no attempt at reasoning or persuasion.

The majority opinion has turned *Mead* on its head. It affords *Skidmore* deference to the guideline in question based solely on its consistency with other "rulings" which also the lack any *Skidmore* factors that would warrant possible deference. The simple fact of the matter is that if a ruling or a guideline lacks any of the controlling factors that warrant *Skidmore* deference, it lacks the power to persuade as a matter of law and is not entitled to deference. *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

The sole protection from perpetuating an erroneous agency interpretation of a statute lies in judicial review of the

8

reasoning of that interpretation and of its power to persuade. Absent such meaningful judicial review, erroneous agency pronouncements, no matter how contrary to the statute, will be enshrined in perpetuity. By affording deference to an administrative "fiat" and justifying that deference based upon four other administrative "rulings" that are similarly devoid of reasoning, the majority opinion employs circular reasoning that results in the denial of meaningful judicial review.

We respectfully submit that at the very least, the government should be directed to file a response on the question of deference pursuant to Rule 38(e)(4) of the Court's Rules and to specifically address in that response the *Skidmore* factors that would justify deference to the guideline in question. These factors simply do not exist and for that reason the majority erred in affording any kind of deference to the guideline in reaching its decision.

**II. THE INTERPRETATION OF THE STATUTORY TERM, "FOOTWEAR OF THE SLIP-ON TYPE, THAT IS HELD TO THE FOOT WITHOUT THE USE OF LACES OR BUCKLES OR OTHER FASTENERS," IS IN ERROR BECAUSE THE ADDITION OF AN IMPLIED COMMA AFTER THE PHRASE "THAT IS" DISTORTS THE MEANING OF THE PROVISION AND FRUSTRATES CONGRESSIONAL INTENT.**

We respectfully submit that the majority opinion instead of giving effect to the plain meaning of the statutory provision and its express language erred in its interpretation of that term. Majority Opinion, 6-14. In addition, by inserting an implied comma after the words, "that is," the majority engaged

9

in unwarranted judicial legislation so as to completely
frustrate expressed congressional intent.

The interpretation by the trial court and majority opinion
renders the phrase "of the slip-on type" surplusage and reads it
out of the statute. As stated in the Dissenting Opinion (pp. 1-
2):

> * * * The majority interprets the subheading
> as covering *any* footwear "that is held to
> the foot without the use of laces or buckles
> or other fasteners." I respectfully
> disagree. If Congress had meant for this
> subheading to cover all such footwear, it
> could simply have written "footwear that is
> held to the foot without the use of laces or
> buckles or other fasteners," and omitted the
> words "of the slip-on type." It did not do
> so, suggesting that the heading *is* more
> limited, and in particular that the words
> "of the slip-on type" are limiting.
> [footnote omitted].

The Dissenting Opinion further addressed the error in the
majority opinion stating (Dissenting Opinion p. 4):

> This interpretation of the statutory
> language [Judge Dyk's interpretation] does
> not violate the rule against surplusage
> because it renders the phrase "that is held
> to the foot without the use of laces or
> buckles or other fasteners" surplus. In
> fact, these words are not surplus, but
> rather serve to exclude shoes that are
> easily slipped on but that have "few," as
> opposed to "no," fasteners.
>
> * * *
>
> Nor, contrary to the majority, does this
> reading of the statutory term, "footwear of
> the slip-on type, that is held to the foot

10

without the use of laces or buckles or other fasteners" render surplus the separate clause of the same heading that covers "[f]ootwear with open toes or heels." While *some* open-heel footwear may fall within the statutory term at issue, other such footwear may have straps or other fasteners holding the foot in place.

Deckers has consistently argued that the trial court's interpretation of subheading 6404.19.35 is grammatically incorrect. The Majority Opinion did not disturb the trial court's inference of the existence of a comma in the provision after the words, "that is," a comma that Congress did not, in fact, use. The addition of this comma and equating the words, "that is" with the phrase, "i.e.," completely distorts the meaning of the term "of the slip-on type" and the restrictive clause that follows it. By finding that "the words 'that is' which introduce the relevant clause are directly the equivalent of the phrase *id est,* commonly abbreviated 'i.e.,' and may be rephrased as 'in other words,'" the trial court conflated the phrases "of the slip-on type" and "held to the foot without the use of laces or buckles or other fasteners." *Deckers Outdoor Corporation v. United States*, 36 CIT___, Slip-Op. 12-53, p. 16, 844 F. Supp. 2d 1324, 1331-1332 (2013). That interpretation would lie only if the words "that is" were followed by a comma, as Congress has done in numerous other tariff provisions.

The majority opinion attempts to gloss over this glaring error in statutory interpretation by stating that it "agree[d] with Deckers that the meaning of Subheading 19.35 would have been more pellucid had Congress added an additional comma after the phrase 'that is'." Majority Opinion, pp. 12-13. In fact, Deckers argued that Congress was not ambiguous and that the omission of a comma, after "that is" was intentional. In Deckers Reply Brief, we identified at least 19 other instances throughout the HTSUS in which "that is" or "i.e." have been employed by Congress. Reply Brief, pp 3-12. In four instances, the term, "that is" introduces a restrictive clause without the insertion of a comma after the word "is." In 13 other instances, Congress inserted a comma after the word "is." As would be expected in those instances where a comma is used, what follows is not simply a restrictive clause, but a definition or examples of the statutory language that precedes the introductory phrase. Congress used the abbreviation "i.e." in two other instances. In these cases, the phrase "i.e." properly set off by commas, is used to introduce a definition and maybe read as "in other words."

In those instances in the HTSUS where the words, "that is" are not followed by a comma, the use of the term creates a restrictive clause in the same way that the words, "that is" introduce the further restriction of the term, "of the slip-on

type" in Subheading 6404.19.35. Congress knew exactly what it was doing when it drafted the phrase in question and a lack of a comma after the words, "that is" was intentional. The majority and the trial court committed fundamental error in rewriting the statute to imply the existence of a comma, to clear up an erroneously perceived statutory ambiguity.

### III. THE MAJORITY ERRED IN NOT INTERPRETING THE STATUTORY PROVISION IN ACCORDANCE WITH ITS COMMON AND COMMERCIAL MEANING, IN IGNORING THE LEGISLATIVE HISTORY WHICH IS CONSISTENT WITH THE COMMON AND COMMERCIAL MEANING THAT SLIP-ON FOOTWEAR INCLUDES ONLY SHOES AND NOT BOOTS, IN AFFIRMING THE JUDGMENT OF THE TRIAL COURT WHICH RESOLVED CONTESTED MATERIAL FACTS IN FAVOR OF THE MOVING PARTY INSTEAD OF THE PARTY AGAINST WHOM THE MOTION WAS MADE, AND IN RESOLVING CONTESTED MATERIAL FACTS ON THE BASIS OF RANK HEARSAY CONTAINED ON INTERNET WEBSITES.

Deckers will not here repeat arguments made in the appeal which established that both the common and commercial meaning of the term footwear of the slip-on type includes shoes, but not boots. That position is set forth succinctly and, we respectfully submit correctly, in the Dissenting Opinion p. 2-6.

The majority ignored the common and commercial meaning of the term by reason of its misplaced reliance on the Customs guideline and the inference of a statutory ambiguity in the involved provision that does not exist.

This error was compounded when, after determining the lack of a comma made the statute ambiguous, the majority failed to recognize the legislative history of the involved provision where Congress stated that it was providing for "separate

categories for boots and slip-on footwear . . . ." Committee Print 98-27, Senate Committee on Finance, 96[th] Congress, 1[st] Session (August 1979).

Finally, the majority opinion compounded its error in granting deference to the Customs guideline by ignoring deposition testimony and instead relying on rank hearsay contained in unsupported statements on selected internet websites. Majority Opinion, p.14. Aside from the fact that reliance on such contested factual evidence against the non-moving party is inappropriate in a decision on summary judgment, the websites cover a vast array of footwear, most of which is low-cut. None of the Deckers' boots at issue in this case are categorized as "slip-ons" by the internet statements relied on by the majority. Furthermore, reliance on these selected websites is in contravention of Rule 803(6) of the Federal Rules of Evidence (FRE). No evidence was introduced to show that the websites or information contained therein meet the conditions set forth in FRE 803(6). Had this case gone to trial, Deckers would have been able to demonstrate that these websites cannot be used to support the government's contentions and that no inference can be drawn from the websites to the effect that boots are "footwear of the slip-on type" as that term is used in the statute. Furthermore, even if reference to the websites were permissible under FRE 803(6), the reliance of the trial

14

court and the majority on these websites demonstrates that there is an issue of fact with respect to the characterization of the boots at issue as "of the slip-on type," and any such factual question raised by these websites should have been resolved in favor of the party against whom the motion for summary judgment was made.   *Perry S. McKay, et al., v. United States*, 199 F.3d 1376, 1383 (Fed. Cir. 1999).

## CONCLUSION

With the utmost respect for the majority opinion, Deckers respectfully requests that its Petition for Panel Rehearing and Rehearing on En Banc be granted.   The Court has a unique opportunity in granting this petition to correct a fundamental error which will have a wide impact on Customs jurisprudence with respect to the issue of deference to Customs classifications, statutory interpretation, and the appropriateness for summary judgment in the face of contested material facts.

Respectfully submitted,

RODE & QUALEY
Attorneys for Plaintiff-Appellant
55 West 39th Street
New York, New York   10018
(212) 944-7333

*/Signed/ Patrick D. Gill*

*Of Counsel*,
William J. Maloney

15

**ADDENDUM**

# United States Court of Appeals
# for the Federal Circuit

_____

**DECKERS OUTDOOR CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

_____

2012-1411

_____

Appeal from the United States Court of International Trade in No. 10-CV-0380, Judge Gregory W. Carman.

_____

Decided: May 8, 2013

_____

PATRICK D. GILL, Rode & Qualey, of New York, New York, argued for plaintiff-appellant. With him on the brief were WILLIAM J. MALONEY and ELEANORE KELLY-KOBAYASHI.

BEVERLY A. FARRELL, Trial Attorney, Civil Division, Commercial Litigation Branch, of New York, New York, argued for defendant-appellee. On the brief were STUART F. DELERY, Acting Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC; BARBARA S. WILLIAMS, Attorney in Charge, and MARCELLA POWELL, of New York, New York. Of counsel on the brief

was YALENA SLEPAK, Trial Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

---

Before DYK, MAYER, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MAYER.

Dissenting opinion filed by *Circuit Judge* DYK.

MAYER, *Circuit Judge*.

Deckers Outdoor Corporation ("Deckers") appeals a final judgment of the United States Court of International Trade ("Trade Court") that held that pull-on boots were properly classified under subheading 6404.19.35 ("Subheading 19.35") of the Harmonized Tariff Schedule of the United States ("HTSUS"). *See Deckers Outdoor Corp. v. United States*, 844 F. Supp. 2d 1324 (Ct. Int'l Trade 2012) ("*Trade Court Decision*"). Because we conclude that the merchandise at issue was correctly classified as "footwear of the slip-on type" under Subheading 19.35, we affirm.

## I. BACKGROUND

Deckers imported UGG® Classic Crochet boots into the United States in 2006 and 2007. These boots have a knit upper portion and a rubber sole. They do not have laces, buckles, or other fasteners. The parties agree that the merchandise in question "is sold as boots, that the boots can be pulled on with the hands, and that the boots extend above the ankle[.]" *Trade Court Decision*, 844 F. Supp. 2d at 1327 (citations and internal quotation marks omitted).

At liquidation, United States Customs and Border Protection ("Customs") classified the Classic Crochet boots under Subheading 19.35, which covers:

Footwear with outer soles of rubber, plastics, leather or composition leather and uppers of tex-

tile materials: Footwear with outer soles of rubber or plastics: Other: Footwear with open toes or open heels; *footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners*, the foregoing except footwear of subheading 6404.19.20 and except footwear having a foxing or foxing-like band wholly or almost wholly of rubber or plastics applied or molded at the sole and overlapping the upper[.]

Subheading 19.35 (emphasis added).

Deckers filed a protest challenging the classification of the merchandise, arguing that it should be reclassified under HTSUS subheading 6404.19.90 ("Subheading 19.90"), a basket provision which covers "[f]ootwear with outer soles of rubber . . . and uppers of textile materials" that is "[v]alued [at] over $12/pair." Merchandise classified under Subheading 19.35 was subject to a duty rate of 37.5% *ad valorem*, whereas merchandise classified under Subheading 19.90 was subject to a duty rate of 9% *ad valorem*. *See Trade Court Decision*, 844 F. Supp. 2d at 1326.

After Customs denied its protest, Deckers filed suit at the Trade Court. Deckers argued that the term "footwear of the slip-on type" as used in Subheading 19.35 only encompasses footwear that does not extend above the ankle. *Id.* at 1328. In support, Deckers cited to dictionary definitions of the term "slip-on" in which the only type of footwear specifically mentioned was a "shoe." *See id.* at 1332. Deckers also pointed to language from a Senate Finance Committee Report on the Multilateral Trade Negotiations of 1979, which stated that "[t]he final U.S. position provides separate categories for boots and slip-on footwear . . . ." S. Comm. on Fin., Agreements Being Negotiated at the Multilateral Trade Negotiations in Geneva—U.S. Int'l Trade Comm'n Investigation No. 332-

101, 96th Cong. 126 (Comm. Print 1979) ("*Trade Negotiations Report*").

The Trade Court rejected Deckers' arguments and granted the government's motion for summary judgment. The court noted that *Footwear Definitions*, Treas. Dec. 93-88, 27 Cust. B. & Dec. No. 46, 1993 CUSBUL LEXIS 108, at *24 (Oct. 25, 1993) ("*Treasury Decision 93-88*"), a Customs publication designed to assist importers in understanding classification requirements, specifically provides that the term "slip-on" includes "[a] boot which must be pulled on." The court determined, after reviewing several dictionary definitions of the term "slip-on," that "the absence of fasteners is determinative . . . in whether an item is or is not a slip-on." *Trade Court Decision*, 844 F. Supp. 2d at 1332. The court concluded, moreover, that the clause "without the use of laces or buckles or other fasteners" that follows the phrase "footwear of the slip-on type" in Subheading 19.35 "serves to explain and elaborate upon" the meaning of the term "slip-on." *Id.* at 1331 (internal quotation marks omitted). Because the Classic Crochet boots have no laces, buckles, or other functional fasteners, the Trade Court concluded that they were properly classified under Subheading 19.35. *Id.* at 1332-33.

Deckers then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo the Trade Court's grant of summary judgment on tariff classifications. *LeMans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011); *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). A classification decision requires two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2) determining

the correct heading under which the disputed goods fall, which is a question of fact. *Outer Circle Prods. v. United States*, 590 F.3d 1323, 1325 (Fed. Cir. 2010). In reviewing tariff classifications, we accord deference to a Customs' classification ruling in proportion to its "power to persuade" under the principles articulated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See United States v. Mead Corp.*, 533 U.S. 218, 221 (2001) (explaining that a Customs' tariff classification "ruling is eligible to claim respect according to its persuasiveness").

## B. THE HTSUS

The HTSUS is organized by headings and each of these headings has one or more subheadings. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The headings contain "general categories of merchandise," whereas "the subheadings provide a more particularized segregation of the goods within each category." *Id.* The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation ("GRIs"). *See LeMans*, 660 F.3d at 1316. These GRIs must be applied in numerical order. *Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1364 (Fed. Cir. 2011).

On appeal, Deckers asserts that Customs erred in classifying the Classic Crochet boots as "footwear of the slip-on type" under Subheading 19.35. In support, it advances two principal arguments. First, it contends that the term "footwear of the slip-on type" as used in Subheading 19.35 only applies to shoes and does not encompass boots. In Deckers' view, "[f]ootwear of the slip-on type is a category of footwear, specifically a sub-category of shoes, but not a sub-category of boots." Second, Deckers asserts that because the Classic Crochet boots must be "pulled on" with the hands, they do not qualify as "slip-on" footwear.

We find neither of these arguments persuasive. The statutory language, the definition of "slip-on" contained in *Treasury Decision 93-88*, and the common and commercial understanding of the term "slip-on," all support the Trade Court's determination that the Classic Crochet boots fall squarely within the scope of Subheading 19.35.

### C. THE STATUTORY LANGUAGE

"[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). GRI 1 thus recognizes that the first step in determining whether goods have been properly classified is to examine the language of the relevant HTSUS headings and subheadings. *See Arko Foods*, 654 F.3d at 1364.

Deckers' argument that boots are excluded from the scope of Subheading 19.35 is contravened by the plain language of the statute. Subheading 19.35 is not limited to shoes, but instead covers "*footwear* of the slip-on type." Subheading 19.35 (emphasis added). As Deckers acknowledges, the term "footwear" plainly encompasses both shoes and boots.[1] *See* Br. of Appellant 8 (acknowl-

---

[1]    The explanatory notes to Chapter 64 make clear that the term "footwear" includes boots. *See* Ch. 64 Gen. Explanatory Note (A) (stating that "[f]ootwear may range from sandals . . . to thigh-boots"). Although HTSUS explanatory notes are not legally binding, they are instructive on the meaning of a particular tariff provision. *See Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992).

edging that the Classic Crochet boots are "footwear with outer soles of rubber or plastic"). Certain HTSUS provisions refer specifically to shoes. *See* HTSUS 6404.11 (referring to "tennis shoes," "basketball shoes," and "gym shoes"); *id.* 6403.19.30 (referring to "golf shoes"). Other HTSUS provisions refer specifically to boots. *See id.* 6402.12.00 (referring to "[s]ki-boots" and "snowboard boots"). In drafting Subheading 19.35, however, Congress did not use the term "shoe" or "boot," but instead employed the broader term "footwear." If Congress had intended that Subheading 19.35 apply only to shoes, rather than to various types of footwear, it could readily have inserted the word "shoe" into the statute. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations and internal quotation marks omitted)). In arguing that Subheading 19.35 excludes boots, Deckers excises the word "footwear" from the statutory text. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("The cardinal principle of statutory construction is to save and not to destroy," and a court is obligated "to give effect, if possible, to every clause and word of a statute." (citations and internal quotation marks omitted)).

Deckers' position is further undermined by *Treasury Decision 93-88*, which specifically provides that the term "slip-on" includes a pull-on boot:

A "slip-on" includes:

1. *A boot which must be pulled on.*

2. Footwear with elastic gores which must be stretched to get it on or with elastic sewn into the top edge of the fabric of the upper.

3. Footwear with a shoe lace around the top of the upper which is clearly not functional, i.e., the lace will not be tied and untied when putting it on or taking it off.

It does not include any boot or shoe with any laces, buckles, straps, snaps, or other closure, which are probably closed, i.e., tied, buckled, snapped, etc., after the wearer puts it on.

*Treasury Decision 93-88*, 1993 CUSBUL LEXIS, at *24-25 (emphasis added).

While the definitions contained in *Treasury Decision 93-88* "are not to be construed as Customs rulings," they have been used by Customs since at least 1993 and are specifically designed to assist importers "in better understanding classification requirements." *Id.* at *1. The Trade Court has previously determined that the footwear definitions contained in *Treasury Decision 93-88* are "persuasive when read together with the tariff provision." *Carrini, Inc. v. United States*, 25 Ct. Int'l Trade 857, 863 (2001). Significantly, Customs has repeatedly classified boots without laces or other fasteners as "footwear of the slip-on type" under Subheading 19.35. *See* U.S. Customs Serv., NY L85617 (June 27, 2005) (concluding that a "women's slip-on fashion boot" was properly classified under Subheading 19.35); U.S. Customs Serv., NY K88830 (Sept. 17, 2004) (concluding that a "women's slip-on boot" with "a predominately stretch knit textile material upper" was properly classified under Subheading 19.35); U.S. Customs Serv., NY C88564 (June 15, 1998) (concluding that a "women's black, over the ankle height pull-on, elasticized textile upper dress boot" was properly classified under Subheading 19.35); U.S. Customs Serv., NY D81445 (Aug. 28, 1998) (concluding that a "woman's

pull-on fashion boot" was properly classified under Sub-
heading 19.35). The consistency of Customs' interpreta-
tion of the term "slip-on" serves to enhance the
persuasive power of that interpretation. *See Dell Prods.
LP v. United States*, 642 F.3d 1055, 1060 (Fed. Cir. 2011);
*see also Warner-Lambert Co. v. United States*, 407 F.3d
1207, 1209 (Fed. Cir. 2005) (explaining that the degree of
deference afforded a Customs' classification depends on
the "consistency of the classification with earlier and later
pronouncements").

Deckers does not dispute that the definition of "slip-
on" contained in *Treasury Decision 93-88* expressly in-
cludes "[a] boot which must be pulled on." It argues,
however, that the Trade Court erred in relying on this
definition because the footwear "industry does not consid-
er any type of boot, especially one that has to be pulled on,
to be of the slip-on type." We disagree. As the Trade
Court correctly determined, the term "slip-on" can be used
to refer to both shoes and boots. *See Trade Court Deci-
sion*, 844 F. Supp. 2d at 1332-33 ("[I]t is clear that the
term 'slip-on' is commonly used to refer to both shoes and
boots. . . . [Deckers'] narrow reading of the term 'slip-on' is
unjustifiably cramped."). When it was before the trial
court, the government provided several examples from
commercial websites demonstrating that footwear retail-
ers commonly refer to boots as "slip-ons." The govern-
ment noted that the Shopzilla website advertises an
UGG® "slip-on" boot. The Orvis website specifically
states that "UGG® Slip-On Sheepskin Boots" are "Ugg's
best-selling winter boots," and the Zappos website states
that the UGG® Newbreak boot has "an easy slip-on
silhouette." Similarly, the Robert Frost Fine Footwear
website describes the "Ugg Australia Ayer Slip-on Boot"
as "[a] classic pull-on boot" that can be taken "on and off
with ease." Perhaps most significantly, the government
produced evidence showing that a search for the term
"slip-on" on the UGG® Australia official website "re-

turn[ed] results including over-the-ankle footwear such as
the Men's Brockman, Men's Leighton, Women's Sundance
II, and Women's Classic Mini." *Trade Court Decision,* 844
F. Supp. 2d at 1329 (footnote omitted). Given that several
online retailers describe boots as "slip-on" footwear, we
reject Deckers' assertion that the footwear industry does
not consider any type of boot to be "of the slip-on type."
*See LeMans,* 660 F.3d at 1316 ("[W]e construe the terms
used in the headings and subheadings according to their
common and popular meaning, which may be drawn from
our own understanding, dictionaries and other reliable
sources." (citations and internal quotation marks omit-
ted)); *Rollerblade, Inc. v. United States,* 282 F.3d 1349,
1352 (Fed. Cir. 2002) ("When the HTSUS does not define
a tariff term, the term receives its common and popular
meaning." (citations and internal quotation marks omit-
ted)).

In support of its claim that the term "slip-on" only co-
vers shoes and excludes boots, Deckers relies heavily on
the definition of "slip-on" contained in The Complete
Footwear Dictionary 167 (2d ed. 2000). That lexicon
provides that a "slip-on" is "[a] plain but dressy pump
without lacings or other fastenings, worn by either men or
women. Any shoe without fastenings." When it was
before the Trade Court, however, the government cited to
other dictionary definitions that define "slip-on" more
broadly. These definitions make clear that while the term
"slip-on" certainly includes shoes, it also encompasses
various other items, such as gloves, pull-on garments, and
girdles. *See Trade Court Decision,* 844 F. Supp. 2d at
1332 (noting that the items described as "slip-ons" in
various dictionaries include "a garment [that can] be
slipped on or off over the head," a "pullover," "a glove or
shoe without fastenings," and "a garment ([such] as a
girdle) that one steps into and pulls up" (citations and
internal quotation marks omitted)). Because there are
competing dictionary definitions of the term "slip-on"—

and many of those definitions are not limited to shoes—
the Trade Court correctly declined to limit the term
"footwear of the slip-on type" to shoes. *See Intercontinental Marble Corp. v. United States*, 381 F.3d 1169, 1173
(Fed. Cir. 2004) (refusing to limit the term "marble" to its
"geological definition" where dictionary definitions stated
that marble had a geological definition, but also indicated
that the term had "a broader non-geological meaning").

### D. SLIP-ON FOOTWEAR

Deckers further contends that the Classic Crochet
boots do not qualify as "footwear of the slip-on type"
under Subheading 19.35 because they cannot be "slipped
on," but instead "must be pulled on with both hands." We
do not find this reasoning persuasive. As discussed
previously, dictionary definitions make clear that the
term "slip-on" can include items such as gloves, pullover
garments, and girdles. *See Trade Court Decision*, 844 F.
Supp. 2d at 1332. Indisputably, a girdle is not an item
that can be put on without use of the hands. Likewise,
gloves and pullover garments are normally donned using
the hands. Given that several dictionary definitions of
the term "slip-on" describe items that must be pulled on
with the hands, we reject Deckers' assertion that pull-on
footwear is excluded from the scope of Subheading 19.35.[2]

---

[2]  Deckers cites to a Senate Finance Committee Report on the Multilateral Trade Negotiations of 1979 which
states that "[t]he final U.S. position provides separate
categories for boots and slip-on footwear at a duty rate of
37.5 percent ad valorem." *Trade Negotiations Report* at
126. Without more, however, this statement cannot
override the plain language of Subheading 19.35, which is
not limited to "shoes of the slip-on type," but instead
applies to the broader category of "footwear of the slip-on
type." As we have previously made clear, "clear evidence
of legislative intent [is] required to overcome the presumption that the terms in the tariff schedules carry their

*See Trade Court Decision,* 844 F. Supp. 2d at 1333 ("It would be contrary to common sense and meaning to limit the term 'slip-on' to footwear able to be put on or taken off without using the hands, but to apply the term 'slip-on' to other garments requiring use of the hands.").

As noted previously, Subheading 19.35 covers "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners." In the Trade Court's view, the relative clause that follows the phrase "footwear of the slip-on type" is designed "to explain and elaborate upon" what is meant by the term "slip-on type." *Trade Court Decision,* 844 F. Supp. 2d at 1331. The court explained that "[t]he words 'that is' which introduce the relative clause are directly equivalent to the phrase *id est,* commonly abbreviated as 'i.e.,' and may be rephrased as 'in other words' with no change in meaning." *Id.* at 1332. Thus, according to the Trade Court, "footwear of the slip-on type" can be defined as footwear that does not have laces, buckles, or other functional fasteners. *Id.*

Deckers argues that this interpretation of Subheading 19.35 "strains logic and grammar." In Deckers' view, if the relative clause "held to the foot without the use of laces or buckles or other fasteners," were designed to explain what was meant by the term "footwear of the slip-on type," Congress would have inserted an additional comma following the phrase "that is." We agree with

---

commercial meanings." *Intercontinental Marble,* 381 F.3d at 1175 (citations and internal quotation marks omitted). We note, moreover, that the focus of the committee report relied upon by Deckers was on the fact that imports of "rubber footwear" had increased dramatically between 1973 and 1978, and the report did not specifically address the question of whether pull-on boots constitute a type of slip-on footwear. *See Trade Negotiations Report* at 126.

Deckers that the meaning of Subheading 19.35 would have been more pellucid had Congress added an additional comma after the phrase "that is." We note, however, that defining the term "slip-on footwear" as footwear that does not contain "laces or buckles or other fasteners" is consistent with dictionary definitions which indicate that the lack of fasteners is a characteristic feature of slip-on items.[3] *See* New Oxford Am. Dictionary 1597 (2d ed. 2005) (stating that the adjective "slip-on" is used especially to refer to "shoes or clothes" that have "no (or few) fasteners and [are] therefore able to be put on and taken off quickly"); Webster's Third New Int'l Dictionary 2144 (Unabridged ed. 1993) (defining "slip-on" as "an article of clothing that is easily slipped on or off," such as "a glove or shoe without fastenings"); The Complete Footwear Dictionary at 167 (stating that a "slip-on" is "[a] plain but dressy pump without lacings or other fastenings"); Webster's New World Dictionary of the Am. Language 1340 (2d coll. ed. 1974) (stating that "slip-on" means "easily put on or taken off, as shoes without laces or a garment to be slipped on or off over the head").

---

[3]    The dissent suggests that "[i]f Congress had meant this subheading to cover all such footwear, it could simply have written 'footwear that is held to the foot without the use of laces or buckles or other fasteners.'" *Post* at 1. But in enacting the HTSUS, Congress recognized that the HTSUS represents the collective administrative contributions of various U.S. Departments and agencies, and that it reflects trade interests of parties in the United States and throughout the world. Congress enabled the Secretary of the Treasury to implement and interpret the HTSUS, *see, e.g.,* 19 U.S.C. § 1625, and it is Customs' interpretation that we address in this case.

Furthermore, Deckers' proffered interpretation of the term "slip-on footwear" would render other language in Subheading 19.35 superfluous. Subheading 19.35 specifically includes "[f]ootwear with . . . open heels." Items of footwear that have open heels are, quite obviously, generally easy to step into without using the hands. Indeed, the UGG® Australia official website depicts several types of slippers, clogs, and "scuffs," which have open heels and which could therefore be readily put on without use of the hands. *See* J.A. 165-78. If we were to accept Deckers' argument that "slip-on" footwear is footwear that can be stepped into without using the hands, then the language in Subheading 19.35 referring to "footwear with . . . open heels" would be rendered superfluous because such footwear would already be included within the definition of "footwear of the slip-on type." When interpreting HTSUS provisions, we must strive to give effect to every word in the statutory text. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) (explaining that "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"); *Corley v. United States*, 556 U.S. 303, 314 (2009) (emphasizing that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citations and internal quotation marks omitted)).

### E. SUMMARY JUDGMENT

In a classification dispute, the grant of summary judgment is appropriate where there is no genuine dispute as to the nature of the merchandise and the classification determination turns on the proper meaning and scope of the relevant tariff provisions. *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1998); *see also Cummins*, 454 F.3d at 1363 (emphasizing that "when the nature of the merchandise is undisputed . . . the classification issue collapses entirely into a question of law"). Here, there were no genuine issues of

material fact regarding the salient physical characteristics of the Classic Crochet boots. To the contrary, the government had conceded that the boots had to be pulled on with the hands. Thus, resolution of the parties' dispute centered on the meaning of the term "footwear of the slip-on type," a question of statutory interpretation. *See Bausch & Lomb*, 148 F.3d at 1365 ("[S]ummary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is.").

The Trade Court may examine many resources to ascertain the common meaning or commercial understanding of a particular tariff term. *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356-57 (Fed. Cir. 2001) ("To ascertain the common meaning of a term, a court may consult dictionaries, scientific authorities . . . and lexicographic and other materials." (citations and internal quotation marks omitted)). Here, Deckers had ample opportunity to submit evidence regarding the common understanding of the term "footwear of the slip-on type" when it submitted its opposition to the government's motion for summary judgment. Deckers provided the trial court with various dictionary definitions of the term "slip-on" and also submitted the deposition testimony of Peter Young, a Deckers employee. Young stated that a person would be unable to "slide" his or her foot into the Classic Crochet boot, but would instead have to "pull" the boot on. J.A. 96-97. Such testimony, however, was insufficient to create any genuine issues of material fact given that the government had conceded that the Classic Crochet boots were pulled on with the hands.[4] *See Trade Court Decision*, 844 F. Supp. 2d at 1327.

---

[4]    Young also stated that he did not believe that a pull-on boot could qualify as a "slip-on" because the terms "pull-on" and "slip-on" are "contradictory." J.A. 103. The Trade Court had the opportunity to fully consider Young's

Deckers asserts that if the case had proceeded to trial it would have produced testimony from industry witnesses who would have opined that the footwear "industry does not consider any type of boot, especially one that has to be pulled on, to be of the slip-on type." Deckers fails, however, to identify any of these purported industry witnesses. Nor did Deckers offer any affidavits or declarations from such witnesses when it was before the Trade Court. Under such circumstances, Deckers' unsupported assertion that unnamed industry witnesses would have testified that the footwear industry does not consider a boot to be a "slip-on" is too speculative to raise any genuine issue of material fact. *See Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1364 (Fed. Cir. 2010) (explaining that "[a]n unsupported opinion . . . cannot and does not

---

deposition testimony before granting the government's motion for summary judgment. *See Trade Court Decision,* 844 F. Supp. 2d at 1333. The court determined, however, that the dictionary definitions provided by the government and *Treasury Decision 93-88* provided a more persuasive interpretation of the term "slip-on footwear" in Subheading 19.35.

The Trade Court also had the opportunity to consider the deposition testimony of Stacey Kalkines, an import specialist employed by Customs. Kalkines acknowledged that no one from Customs had tried on a sample of the Classic Crochet boot before classifying the boots under Subheading 19.35.   J.A. 116-17.   Kalkines explained, however, that Customs determines whether boots qualify as "footwear of the slip-on type" by ascertaining whether the boots have fasteners. *Id.* Customs could determine whether a particular boot had fasteners "by a visual examination without trying to put the boot on." *Id.* at 116.

create a genuine issue of material fact"); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) (emphasizing that "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

## III. Conclusion

Accordingly, the judgment of the United States Court of International Trade is affirmed.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

---

**DECKERS OUTDOOR CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-1411

---

Appeal from the United States Court of International Trade in No. 10-CV-0380, Judge Gregory W. Carman.

---

DYK, *Circuit Judge*, dissenting.

This appeal requires us to determine whether the phrase "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners," in subheading 6404.19.35 of the Harmonized Tariff Schedule of the United States ("HTSUS"), covers boots that rise above the ankle and that must be pulled on using the hands. The majority interprets the subheading as covering *any* footwear "that is held to the foot without the use of laces or buckles or other fasteners." I respectfully disagree. If Congress had meant for this subheading to cover all such footwear, it could simply have written "footwear that is held to the foot without the use of laces or buckles or other fasteners," and omitted the words "of the slip-on type." It did not do so, suggesting that the subheading is more limited, and in particular that the

words "of the slip-on type" are limiting.[1]

In interpreting tariff provisions, we look to the common and commercial meaning of the terms involved. "[T]ariff acts are generally to be construed according to the commercial understanding of the terms employed," *Swan v. Arthur*, 103 U.S. 597, 598 (1881), so that "[a]bsent legislative intent to the contrary, we construe HTSUS terms according to their common and commercial meanings, which are presumed to be the same," *Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002). The term "footwear of the slip-on type" has a common and commercial meaning that excludes boots of the type involved here. In order to qualify as "footwear of the slip-on type," under the common and commercial definition, an item of footwear must satisfy three limitations: it must be a *shoe* (that is, not a high-cut boot); it must be *easy to slip on*; and it must have *few or no fasteners*.

Both specialized and general-purpose dictionaries support this definition of "footwear of the slip-on type." Two industry references define a "slip-on" as, respectively, "[a]ny *shoe without fastenings*," and "[a]ny *shoe* into which the wearer *merely slips the foot*, held *without benefit of lacing, buckles[,] or other fastening*." *See The Complete Footwear Dictionary* 167 (William A. Rossi ed., 2d ed. 2000) (emphasis added); *The Dictionary of Shoe Industry Terminology* (Ruth J. Schachter ed., 1986) (emphasis added). One general-purpose dictionary defines "slip-on"

---

[1]    "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation marks omitted); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

as an adjective meaning *"easily put on or taken off,* as *shoes without laces,"* or as a noun describing "a slip-on *shoe* or garment." *Webster's New World Dictionary of the American Language* 1340 (2d. college ed. 1984) (emphasis added). Another general-purpose dictionary defines "slip-on" as an adjective applied "esp[ecially to] *shoes* or clothes," and meaning "having *no (or few) fasteners* and therefore *able to be put on and taken off quickly"*; the same dictionary also defines "slip-on" as a noun describing "a *shoe* or garment that can *be easily slipped on and off." The New Oxford American Dictionary* 1597 (2d ed. 2005) (emphasis added). A third general-purpose dictionary defines "slip-on" either as "a glove or *shoe without fastenings,"* or simply as "an article of clothing that is *easily slipped on or off." Webster's Third New International Dictionary of the English Language Unabridged* 2144 (2002) (emphasis added).

Furthermore, the term "shoe," in its common and commercial definition, excludes high-cut boots. One specialized dictionary defines "shoe" as including "chiefly *low-cut footwear versus high-tops or boots,"* while two general-purpose dictionaries define "shoe" as, respectively, a "covering for the foot . . . *not reaching above the ankle,"* and a "durable covering for the human foot, *esp[ecially] one . . . reaching about to the ankle." The Complete Footwear Dictionary, supra,* at 155 (emphasis added); *The New Oxford American Dictionary, supra,* at 1566 (emphasis added); *The American Heritage Dictionary* 1132 (2d college ed. 1982). A third general-purpose dictionary defines "shoe" more broadly, as "an outer covering for the human foot usu[ally] made of leather," but two of its exemplary sub-definitions are limited to low-cut footwear ("an outer foot covering *reaching to the ankle or thereabouts,"* and "a *low-cut* outer foot covering—*compare boot, oxford"). Webster's Third New International Dictionary, supra,* at 2099 (emphasis added).

The government does not contest that these dictionary

definitions set forth the term's common and commercial meaning. Rather, the government emphasizes the fact that several of the "shoe" definitions acknowledge that the term sometimes designates an above-the-ankle boot. It is apparent from the definitions in the record, however, that this usage of "shoe" is uncommon or disfavored.

Having adopted this common and commercial definition of "footwear of the slip-on type," it is clear that the boots at issue in this appeal do not fall within subheading 6404.19.35. The government has conceded that the boots are, indeed, "boots"; that they rise above the ankle; and that "[t]o don the boots, a wearer must grip the top of the woven textile upper with two hands . . . and *pull the boot up forcefully* while adjusting the foot until the foot and calf are securely ensconced." *See Deckers Outdoor Corp. v. United States*, No. 08-00410, slip op. at 2, 5-6 (Ct. Int'l Trade Apr. 24, 2012) (emphasis added); United States Br. 2-3. The boots therefore fail two of the three criteria for being "footwear of the slip-on type": they are not shoes, and they are not easy to slip on.

This interpretation of the statutory language does not violate the rule against surplusage because it renders the phrase "that is held to the foot without the use of laces or buckles or other fasteners" surplus. In fact, these words are not surplus, but rather serve to exclude shoes that are easily slipped on but that have "few," as opposed to "no," fasteners. *See The New Oxford American Dictionary, supra*, at 1597 (defining "slip-on" as "having no (*or few*) fasteners and therefore able to be put on and taken off quickly" (emphasis added)). Nor, contrary to the majority, does this reading of the statutory term "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners" render surplus the separate clause of the same subheading that covers "[f]ootwear with open toes or open heels." While *some* open-heel footwear may fall within the statutory term at issue, other such footwear may have straps or other

fasteners holding the foot in place. Indeed, the government's own set of "Footwear Definitions," which both the government and the majority cite as authoritative in this case, defines "open heeled shoes" as including any shoes in which "all or part of the back of the wearer's heel can be seen"—a definition that clearly allows for shoes with a rear strap or fastener. See *Footwear Definitions*, T.D. 93-88, 27 Cust. B. & Dec. No. 46, at *15 (Oct. 25, 1993).

Finally, the majority urges that we should defer to the definition of "slip-on" found in the government's collection of "Footwear Definitions." According to this document, "[a] 'slip-on' includes . . . [a] boot which must be pulled on." *See id.* at *24. Presumably, this definition would include cowboy boots, which can be exceptionally difficult to place on the foot. As the majority concedes, however, the definitions included in this document are not formal "Customs rulings." *See id.* at *1. As such, these definitions are entitled only to *Skidmore* deference, notwithstanding the length of time to which the agency has adhered to them. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. __, __, 131 S. Ct. 1325, 1335-36 (2011) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and *United States v. Mead Corp.*, 533 U.S. 218 (2001)); *see also Dell Prods. LP v. United States*, 642 F.3d 1055, 1060 (Fed. Cir. 2011) (citing *Mead*). Under *Skidmore* deference, such agency pronouncements are "eligible to claim respect according to [their] persuasiveness." *See Mead*, 533 U.S. at 221; *see also Skidmore*, 323 U.S. at 140 ("The weight [given to an agency's non-definitive pronouncement] will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). The document does not provide any reasoning for its definitions, but simply asserts by fiat that "boot[s] which must be pulled on" are "slip-on[s]." *See Footwear Definitions*, T.D. 93-88, 27 Cust. B. & Dec. No.

46, at *24. For the reasons discussed above, the government's interpretation of subheading 6404.19.35 is unpersuasive.

In sum, the common and commercial meaning of the term "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners" excludes boots that rise above the ankle and that are not easy to slip on, such as the boots at issue in this appeal. I respectfully dissent.

**NY L85617**

June 27, 2005

CLA-2-64:RR:NC:SP:247 L85617

CATEGORY: Classification

TARIFF NO.: 6404.19.35

Mr. Kelly Spivey FedEx Trade Networks 4111-A Rose Lake Drive Charlotte, NC 28217

RE:    The tariff classification of footwear from Portugal

Dear Mr. Spivey:

In your letter dated June 14, 2005, on behalf of Off Broadway Shoes, you requested a tariff classification ruling.

The submitted half pair sample is a women's slip-on fashion boot, identified as style name "Shannon" SKU#101092. The boot is approximately 14-inches high and has an upper consisting of a leather foot portion and a textile material shaft portion that covers most of the wearer's calf. By visual estimates, we have determined that the external surface area material of the upper (ESAU) is predominately of textile material. The boot also has a wooden wedge-type midsole and heel, and a rubber/plastic outer sole.

The applicable subheading for this boot, identified as style name "Shannon" SKU#101092, will be 6404.19.35, Harmonized Tariff Schedule of the United States (HTS), which provides for footwear, in which the upper's external surface is predominately textile materials (excluding accessories or reinforcements); in which the outer sole's external surface is predominately rubber and/or plastics; which is not "athletic" footwear; which is not designed to be a protection against water, oil or cold or inclement weather; which is of the slip-on type; which does not have a foxing or a foxing-like band; and which is over 10% by weight of rubber and/or plastics. The rate of duty will be 37.5% ad valorem.

The marking statute, section 304, Tariff Act of 1930, as amended (19 U.S.C. 1304), provides that, unless excepted, every article of foreign origin (or its container) imported into the U.S. shall be marked in a conspicuous place as legibly, indelibly and permanently as the nature of the article (or its container) will permit, in such a manner as to indicate to the ultimate purchaser in the U.S. the English name of the country of origin of the article. We note that the sample boot you have provided for this ruling request has not been marked with the country of origin. Therefore, if imported as is, the boots do not meet the country of origin marking requirements of the marking statute and will be considered not legally marked.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Richard Foley at 646-733-3042.

Sincerely,

Robert B. Swierupski                    Director,                    National Commodity

Specialist Division

**NY K88830**
September 17, 2004
CLA-2-64:RR:NC:SP:247 K88830
CATEGORY: Classification
TARIFF NO.: 6404.19.35
Ms. Melissa Fox Barthco International, Inc.

721 Chestnut Street Philadelphia, PA 19106
RE:    The tariff classification of footwear from China
Dear Ms. Fox:

In your letter dated August 23, 2004, on behalf of your client Nine West, Inc., you requested a tariff classification ruling.

The submitted half pair sample identified as "style TIEITUP" is a women's slip-on boot approximately 15 inches high. The boot has a predominately stretch knit textile material upper external surface area that includes most of the upper's shaft portion covering the wearer's calf, plus a lower leather material foot portion that accounts for most of the instep and the back of the heel. It also has a sewn-on, one inch wide leather pull-up strap that is situated down the entire back length of the textile shaft and a one inch wide decorative instep strap leather accessory with a metal buckle that may be adjusted for fit if desired, but it does not serve as a functional closure that needs to be undone to remove this boot. The boot also has a cemented-on unit molded rubber/plastic bottom/outsole that overlaps the upper by a vertical height of less than ¼-inch. We do not consider this boot to have a foxing or a foxing-like band and we will presume for the purposes of this ruling that this boot is not designed to be protective.

The applicable subheading for the women's boot identified as "style TIEITUP" will be 6404.19.35, Harmonized Tariff Schedule of the United States (HTS), which provides for footwear, in which the upper's external surface is predominately textile materials (excluding accessories or reinforcements); in which the outer sole's external surface is predominately rubber and/or plastics; which is not "athletic" footwear; which is not designed to be a protection against water, oil or cold or inclement weather; which is of the slip-on type; which does not have a foxing or a foxing-like band wholly or almost wholly of rubber or plastics; and which is over 10% by weight of rubber and/or plastics. The rate of duty will be 37.5% ad valorem.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Richard Foley at 646-733-3042.

Sincerely,
Robert B. Swierupski          Director,          National Commodity
Specialist Division

**NY C88564**
      June 15, 1998
CLA-2-64:RR:NC:TA:347 C88564
CATEGORY: Classification
TARIFF NO.: 6404.19.35
Mr. R. Patrick Doyle
Stride Rite Corp.

191 Spring St.

Lexington, MA 02173-9191
RE:     The tariff classification of footwear from Italy
Dear Mr. Doyle:


   In your letter dated May 28, 1998 you requested a tariff classification ruling.


   The submitted half pair sample is a woman's black, over the ankle height pull-on, elasticized textile upper dress boot, identified by you as your "Tommy Hilfiger Newbury Elastic Bootie, stock numbers W10121(black) and W10124(blue)".

The boot is of the slip-on type, held to the foot without the use of laces or buckles or other fasteners, with a 2-1/2 inch high stacked heel and a rubber/plastic outer sole.


   The sample is not marked with the country of origin. Therefore, if imported as is, the boot will not meet the country of origin marking requirements of 19 U.S.C. §1304. Accordingly, it will be considered not legally marked under the provisions of 19 C.F.R. §134.11 which states "every article of foreign origin (or its container) imported into the U.S. shall be marked in a conspicuous place as legibly, indelibly and permanently as the nature of the article (or container) will permit"
   The applicable subheading for this boot will be 6404.19.35, Harmonized Tariff Schedule of the United States (HTS), which provides for footwear, in which the upper's external surface is predominately textile materials; in which the outer sole's external surface is predominately rubber and/or plastics; which is not "athletic" footwear; which is not designed to be a protection against water, oil, or cold or inclement weather; which is of the slip-on type; which does not have a foxing-like band almost wholly of rubber and/or plastics; and which is 10% or more by weight of rubber and/or plastics. The rate of duty will be 37.5 percent ad valorem.
   This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).


   A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Richard Foley at 212-466-5890.


            Sincerely,

Robert B. Swierupski
Director,
National Commodity
Specialist Division

**NY D81445**
August 28, 1998
CLA-2-64:RR:NC:TA:347 D81445
CATEGORY: Classification
TARIFF NO.: 6404.19.3560
Ms. Jeanne Clark Fritz Companies, Inc.

9800 La Cienega Blvd.

Inglewood, CA 90301-2063
RE: The tariff classification of footwear from China
Dear Ms. Clark:

In your letter dated August 18, 1998, on behalf of Seychelles Imports LLC, you requested a tariff classification ruling.

The submitted sample is a woman's pull-on fashion boot, Style number Y0091. It has a stretch textile fabric upper with an elasticized topline opening, a 3/4 inch wide decorative belt with a metal buckle that is looped around at the ankle, a 2 inch high stacked platform heel and a cemented-on rubber/plastic outer sole.
The applicable subheading for this women's boot will be 6404.19.3560, Harmonized Tariff Schedule of the United States (HTS), which provides for footwear, in which the upper's external surface is predominately textile materials; in which the outer sole's external surface is predominately rubber and/or plastics; which is not "athletic" footwear; which is not designed to be a protection against water, oil, or cold or inclement weather; which is of the slip-on type; which does not have a foxing-like band almost wholly of rubber and/or plastics; and which is 10% or more by weight of rubber and/or plastics. The rate of duty will be 37.5% ad valorem.

We are returning the sample as you requested.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist Richard Foley at 212-466-5890.

Sincerely,
Robert B. Swierupski Director, National Commodity Specialist Division

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 18th day of June, 2013, I caused the attached petition to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Marcella Powell, Esq.
Civil Division, United States Department of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9230 or (212) 264-1873


/s/ *Patrick D. Gill*
Counsel for Plaintiff-Appellant